# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**PHOEBE J. POWELL**

    Plaintiff

CASE NO. __3:23CV-137-DJH__

JUDGE _____

**Jury Demand Endorsed Herein**

vs.

**WALMART, INC.**
**d/b/a WALMART SUPERCENTER**
**#7290**
Registered Agent
C T Corporation System
306 West Main St.
Suite 512
Frankfort, Kentucky 40601

    Defendant

## COMPLAINT

Plaintiff, Phoebe J. Powell, states her Complaint against the above-named Defendant as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Phoebe J. Powell ("Phoebe") is, and at all times alleged herein was, a resident of Henry County, Kentucky.

2. Defendant, Walmart Inc. ("Walmart") is, and at all times alleged herein was, a foreign corporation organized under the laws of Delaware and authorized to transact and in fact transacting business in the Commonwealth of

1

Kentucky, including Oldham County, Kentucky. Walmart manufactures, markets, supplies, and distributes goods to be sold in the Commonwealth of Kentucky, sells such goods in the Commonwealth of Kentucky, and has consistent and significant commercial interactions with the Commonwealth of Kentucky, including Oldham County, Kentucky.

3. At all times pertinent hereto, Walmart owned, operated, and managed Walmart Supercenter #7290 (Store #7290) located at 6501 Veterans Memorial Parkway, Crestwood, Oldham County, Kentucky, at which a substantial part of the events or omissions giving rise to these claims took place.

4. At all times pertinent hereto, Walmart acted through its employees, servants, agents, ostensible agents, subsidiaries, partnerships, and affiliates in is vicariously liable for all actions and omissions of its employees, servants, agents, ostensible agents, subsidiaries, partnerships, and affiliates, including but not limited to Store #7290, William Marshall Blevins, and Jon Shain.

5. This action is brought under the Family Medical Leave Act, 29 U.S.C. Chapter 28, and the Kentucky Civil Rights Act, KRS Chapter 344.

6. Walmart is an employer under 29 U.S.C. § 2611(4)(A), as it engaged in commerce and in industries and activities affecting commerce and employes more than 50 employees for each working day during each of 20 or more calendar workweeks at all times during Phoebe's employment with Walmart.

7.  Walmart is an employer under the Kentucky Civil Rights Act, as it employed more than eight people within Kentucky in each of twenty or more calendar weeks at all times during Phoebe's employment with Walmart.

8.  At all times, pertinent hereto, Phoebe was an employee of Walmart as defined by the Family Medical Leave Act and the Kentucky Civil Rights Act.

## FACTS APPLICABLE TO ALL COUNTS

9.  Phoebe was employed by Walmart as a sales associate at Store #7290 for approximately five years until her unlawful termination on March 24, 2022.

10. While employed by Walmart, Phoebe was qualified for each position that she performed, received excellent performance evaluations, and had no difficulty performing the essential functions of her job.

11. At the time of her unlawful termination on March 24, 2022, Phoebe was approved for, and protected from termination by, intermittent FMLA leave.

12. At the time of her unlawful termination on March 24, 2022, Phoebe was 79 years old.

13. At the time of her unlawful termination on March 24, 2022, Phoebe was disabled.

14. On or around January 28, 2022, Phoebe was diagnosed with COVID-19.

15. On or around January 31, 2022, Phoebe contacted Sedgwick, Walmart's third-party leave administrator, to request intermittent leave under the

FMLA to protect her job while she dealt with the uncertain and potentially permanent effects of COVID.

16. On or around February 12, 2022, Phoebe returned to work at Walmart after her initial bout with COVID. She continued to collaborate with Sedgwick, her doctor, and Walmart to gain intermittent leave approval under the FMLA.

17. Despite Phoebe's recovery from the initial COVID infection, she soon began to suffer from the effects of long COVID—a post-infection syndrome with symptoms that can last years after initial infection.

18. Phoebe's long COVID manifested in overwhelming fatigue, shortness of breath, and frequent, lingering nosebleeds.

19. Phoebe's long COVID substantially limited one or more major life activities.

20. At least as early as mid-February 2022, Walmart was aware that Phoebe was suffering from long COVID, and it was aware of long COVID's effects on Phoebe. In anticipation of a prolonged battle with long COVID, Phoebe continued to coordinate with her doctor, Sedgwick, and Walmart to receive intermittent leave protection under the FMLA to protect her job at Walmart.

21. Under guidance from the federal government, long COVID can be considered a disability under various antidiscrimination laws.

22. Near the end of February or beginning of March 2022, Phoebe requested a reasonable accommodation from Walmart due to her disability

23. Phoebe believed that her long COVID constituted a disability.

24. Walmart likewise believed that Phoebe was disabled and regarded her as such.

25. Phoebe spoke with Marsha Bourke, one of Store #7290's two team leaders, about a reasonable accommodation for her disability in the form of an adjusted work schedule.

26. Bourke initially helped Phoebe create a new schedule that would allow Phoebe to complete the essential functions of her job but ameliorate the fatigue that she continued to suffer as a result of her disability.

27. Walmart approved this reasonable accommodation on or around March 12, 2022; it was signed off on by Bourke, Jon Shain (store manager at Store #7290), and Joe Friedmeyer (a coach at Store #7290).

28. Unbeknownst to Phoebe, William Marshall Blevins, the other team leader at Store #7290 who had in the past expressed age- and disability-related animus against Phoebe (in addition to bullying and harassment tactics), did not personally want Phoebe to be approved for a reasonable accommodation.

29. On March 22, 2022, less than two weeks after Phoebe was approved for a reasonable accommodation, Walmart formally approved Phoebe's intermittent leave under the FMLA covering the span of March 3, 2022 to March 2, 2023.

30. Blevins, Friedmeyer, Shain, and Heather Lay were notified of this approval in an email from Walmart dated March 22, 2022:

> From: walmartincomingreplies@sedgwickcms.com <walmartincomingreplies@sedgwickcms.com>
> Sent: Tuesday, March 22, 2022 12:36 PM
> To: William Blevins - wmb0021.s07290 <wmb0021.s07290.us@wal-mart.com>; Joe Friedmeyer - jjfried.s07290 <jjfried.s07290.us@wal-mart.com>; Jon Shain - jashain.s07290 <jashain.s07290.us@wal-mart.com>; Heather Lay - hml001s.s07290 <hml001s.s07290.us@wal-mart.com>
> Subject: ACTION REQUIRED: Phoebe J Powell /# 224124154 - Leave - Intermittent approval notice
>
> The following associate's intermittent leave request has been **approved**. Please review the information below, and complete the action required.
> Name: Phoebe Powell
> Department/facility: 7290
> Associate WIN: 224124154
>
> Leave case number: 4A22033AMR00001GI
> Leave dates approved: 03/03/2022 -03/02/2023
> - Federal Family and Medical Leave Act dates: 03/03/2022 - 03/02/2023 = **0.00 week(s)** (Job-protected)
>
> Note: Generally, the associate may not take more than 52 weeks of leave in a rolling 52 week period under any and all policies combined. Any approved time under this leave may be deducted from the 52 weeks that may be available to them. The associate's position is not to be replaced for the dates listed as job-protected.

31.     At no point did Walmart inform Phoebe that she had been formally approved for intermittent FMLA leave. Instead, Walmart concealed this information from Phoebe.

32.     Phoebe did not learn that she had been approved for intermittent FMLA leave until the time of her termination on March 24, 2022.

33.     Despite being approved for intermittent leave under FMLA and a reasonable accommodation for her disability, Walmart, by and through its employees, agents, and ostensible agents, unlawfully terminated Phoebe on March 24, 2022.

34.     On March 24, 2022, Blevins, empowered by Shain, called Phoebe's name over the Walmart loudspeaker and summoned her to his office where he

would carry out the termination, much to Phoebe's surprise, embarrassment, and humiliation.

35. At the time of her termination, Blevins refused to acknowledge that Phoebe was approved for FMLA leave two days earlier and that Walmart had already approved a reasonable accommodation for her. Instead, Blevins claimed that Walmart was terminating Phoebe due to an excess of absences.

36. Taking into account Phoebe's previously approved reasonable accommodation and her FMLA protection, Phoebe had not actually exceeded the allotted number of absences.

37. Many of the so-called absences were covered either by FMLA protection or were not actually absences but were scheduled days off under Phoebe's recently approved scheduling accommodation. When Phoebe raised this point, Blevins refused to acknowledge or otherwise discuss this fact with her.

38. Even had Phoebe exceeded the allotted number of absences, Walmart—throughout Phoebe's tenure—treated other younger, non-disabled, and similarly situated employees who missed more than the allotted number of absences differently by not reprimanding or terminating them.

39. Walmart's termination of Phoebe was an express rejection of its prior reasonable accommodation and a refusal to grant or otherwise engage in a good faith and interactive discussion about a reasonable accommodation.

40. Walmart's proffered reason for Phoebe's termination was false and a pretext to conceal Walmart's real reason for terminating Phoebe based on her FMLA protected status, her disability, and her age.

41. At the time of her termination, another Walmart employee remarked to Phoebe that her termination was "for her own good" given Phoebe's age (79) and known health problems.

42. Walmart terminated Phoebe two days after she was approved for intermittent FMLA leave.

43. Jon Shain, store manager of Store #7290, was aware of and ratified all of the events described herein.

44. During her termination, Phoebe left Blevins' office and went to Shain's office where she requested an explanation for her termination. Shain did not provide one and instead indicated his support for and approval of Walmart's decision to terminate Phoebe.

45. At all times relevant hereto, Blevins had the authority to hire and fire employees at Walmart, including Phoebe, and was acting within the course and scope of his employment, agency, or ostensible agency for Walmart.

46. At all times relevant hereto, Shain had the authority to hire and fire employees at Walmart, including Phoebe, and was acting within the course and scope of his employment, agency, or ostensible agency for Walmart.

47. Walmart is directly and vicariously liable for the full extent of harm caused by the wrongful acts and omissions of its employees and agents, including but not limited to, Marshall Blevins and Jon Shain.

48. As a direct and proximate result of Walmart's wrongful acts and omissions, both directly and vicariously, Phoebe has suffered and will continue to suffer humiliation, embarrassment, depression, mental anguish, loss of enjoyment of life, emotional pain and suffering, and emotional distress.

49. As a direct and proximate result of Walmart's wrongful acts and omissions, both directly and vicariously, Phoebe has lost income and has been unable to find suitable gainful employment. Phoebe continues to suffer economic and other non-economic losses.

## COUNT ONE – FMLA DISCRIMINATION/RETALIATION

50. Phoebe incorporates here all allegations contained in this Complaint.

51. The FMLA makes it illegal to retaliate against an employee for exercising or attempting to exercise any right provided for under the FMLA.

52. Phoebe began exercising or attempting to exercise her rights under the FMLA as early as January 31, 2022 when she initiated the FMLA leave application process.

53. All such activity in furtherance of this process was protected.

54. Phoebe was officially granted intermittent FMLA leave on March 22, 2022, covering the period of March 3, 2022 – March 3, 2023.

55. Walmart terminated Phoebe two days later on March 24, 2022 in discrimination of and in retaliation for her exercising or attempting to exercise her right to intermittent leave under the FMLA.

56. Walmart violated the FMLA by terminating Phoebe's employment based upon, directly related to, and in retaliation for her application and reception of intermittent FMLA leave.

57. Phoebe's termination constitutes an adverse employment action by Walmart.

58. There was no legitimate non-discriminatory or non-retaliatory basis for Walmart's termination of Phoebe.

59. Walmart lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its termination of Phoebe.

60. Walmart's violations as alleged herein were knowing, willful, malicious, and with reckless disregard for the effect on Phoebe.

61. Walmart's violations of the Family and Medical Leave Act entitles Phoebe, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

### COUNT TWO – FMLA UNLAWFUL INTERFERENCE

62. Plaintiff incorporates here all allegations contained in the Complaint.

63. The FMLA makes it illegal to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided for under the FMLA.

64. At all times relevant to this Complaint, Phoebe was entitled to intermittent leave under the FMLA, in that she needed to care for her serious health condition.

65. Walmart was aware that Phoebe suffered from a serious medical condition that qualified her for FMLA leave and that she had in fact requested intermittent FMLA leave as early as January 31, 2022.

66. As early as March 22, 2022, Walmart was aware that Phoebe had been officially approved for intermittent FMLA leave by Sedgwick, Walmart's third-party administrator, covering the period of March 3, 2022 – March 3, 2023.

67. Walmart violated the FMLA by failing and/or refusing to inform Phoebe of her rights and obligations under the FMLA, including the adverse actions of failing to provide all necessary notification related to her approval for and opportunities to exercise intermittent leave under the FMLA and refusing to allow Phoebe to reasonably work with Walmart to schedule her intermittent leave.

68. Walmart interfered with, restrained, and denied Phoebe's efforts to exercise her FMLA rights in violation of the FMLA by the adverse action of terminating her employment with Walmart and preventing her from exercising her rights to request and take protected and authorized intermittent leave.

69. Walmart's actions alleged herein, including its termination of Phoebe, was directly related to and because of her requests for FMLA leave.

70. Walmart lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its interference with Phoebe's FMLA rights and its termination of Phoebe.

71. Walmart's violations as alleged herein were knowing, willful, malicious, and with reckless disregard for whether its conduct was prohibited under the FMLA.

72. Walmart's violations of the Family and Medical Leave Act entitles Phoebe, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## COUNT THREE – DISCRIMINATORY DISCHARGE BASED ON DISABILITY UNDER THE KENTUCKY CIVIL RIGHTS ACT

73. Phoebe adopts, reiterates, and incorporates herein by reference all allegations contained in other paragraphs of this Complaint.

74. At all times pertinent hereto, Phoebe was entitled to the rights, protections, and benefits provided under the Kentucky Civil Rights Act, KRS Chapter 344.

75. At all times pertinent hereto, Phoebe was a qualified individual with a disability within the meaning of KRS Chapter 344.

76. Walmart knew that Phoebe was disabled and regarded her as disabled within the meaning of KRS Chapter 344.

77. Walmart was aware of the difficulties that Phoebe suffered because of her disability.

78. Walmart unlawfully discriminated against Phoebe because of her disability by terminating her employment with Walmart on the basis of this disability.

79. As alleged elsewhere herein, Walmart treated similarly situated non-disabled employees more favorably than it treated Phoebe.

80. Walmart's stated reasons for Phoebe's termination were not the true reasons but instead were pretext to hide Walmart's discriminatory animus.

81. As a proximate result of the wrongful acts and omissions of Walmart in violation of KRS 344, Phoebe has sustained the injuries and damages set forth herein.

**COUNT FOUR - FAILURE TO ACCOMMODATE AND RETALIATORY DISCHARGE FOR REQUESTING ACCOMMODATION UNDER THE KENTUCKY CIVIL RIGHTS ACT**

82. Phoebe adopts, reiterates and incorporates herein by reference all allegations contained in other paragraphs of this Complaint.

83. At all times pertinent hereto, Phoebe was disabled and a qualified individual with a disability within the meaning of KRS Chapter 344.

84. Walmart knew that Phoebe was disabled and regarded her as disabled within the meaning of KRS Chapter 344.

85. Walmart was aware of the difficulties that Phoebe suffered because of her disability.

86. Despite Phoebe's disability, she was otherwise qualified to perform the essential functions of her job.

87. Phoebe requested a reasonable accommodation for her disability. In so doing, she was engaging in protected activity under the Kentucky Civil Rights Act.

88. Walmart knew about Phoebe's request for a reasonable accommodation.

89. It was possible for Walmart to provide a reasonable accommodation.

90. Walmart unlawfully discriminated against Phoebe because of her disability by unilaterally rejecting the reasonable accommodation that it had previously approved, by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation, and, consequently, by ultimately refusing her request for a reasonable accommodation.

91. Walmart unlawfully retaliated against Phoebe for requesting a reasonable accommodation by terminating her employment because of her request.

92. As a result of the wrongful acts and omissions of Walmart in violation of KRS 344, Phoebe has sustained the injuries and damages set forth herein

### COUNT FIVE – DISCRIMINATORY DISCHARGE BASED ON AGE UNDER THE KENTUCKY CIVIL RIGHTS ACT

93. Phoebe incorporates here all allegations in the Complaint.

94. Phoebe was 79 years old at the time Walmart discharged her.

95. Phoebe was qualified for the position she held.

96. Walmart terminated Phoebe because of her age.

97. As alleged elsewhere herein, Walmart treated Phoebe differently than younger similarly situated individuals.

98. Walmart did not have a legitimate, nondiscriminatory basis for terminating Phoebe.

99. Walmart's stated reasons for Phoebe's termination were not the true reasons but instead were pretext to hide Walmart's discriminatory animus.

100. As a result of the wrongful acts and omissions of Walmart in violation of KRS 344, Phoebe has sustained the injuries and damages set forth herein.

*****

WHEREFORE, Plaintiff, Phoebe Powell, demands judgment against Defendant, Walmart Inc. d/b/a Walmart Supercenter #7290, for such amounts as will fairly and reasonably compensate her for her damages including her past, present, and future mental and emotional pain and suffering, severe mental anguish, embarrassment, humiliation, depression and loss of enjoyment of life, past, present, and future lost wages and lost earning capacity, and any additional back pay and front pay; for her costs herein including reasonable attorneys' fees, for prejudgment interest from March 24, 2022, on all sums until any judgment is rendered herein, and thereafter for post-judgment interest until such judgment is fully satisfied, all in the full amount allowed by law, compounded annually; for a trial by jury; and for all other relief to which she may appear properly entitled.

Respectfully submitted,

*/s/ Benjamin F. Hachten*
Benjamin F. Hachten
Ann B. Oldfather
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, Kentucky 40208
(502) 637-7200
aoldfather@oldfather.com
bhachten@oldfather.com
*Counsel for Plaintiff*